IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, a Pennsylvania corporation,<br><br>    Plaintiff,<br><br>  v.<br><br>LANDMARK AMERICAN INSURANCE COMPANY, an Oklahoma corporation, and DOES 1 through 10,<br><br>    Defendants. | No. C 05-02803 WHA<br><br>**ORDER GRANTING NATIONAL UNION'S PARTIAL MOTION FOR SUMMARY JUDGMENT AND VACATING HEARING** |

## INTRODUCTION

In this dispute between insurers, plaintiff National Union Fire Insurance Company of Pittsburgh, Pennsylvania moves for partial summary judgment pursuant to Federal Rule of Civil Procedure 56 on the issue of whether defendant Landmark American Insurance Company's insurance obligation is primary to the obligation of National Union. This order holds that Landmark's primary policy must be exhausted prior to any obligation accruing under National Union's excess policy. Accordingly, National Union's motion is **GRANTED**.

## STATEMENT

The factual background of this dispute was set forth in greater detail in this Court's order issued on May 22, 2006, regarding an earlier motion for partial summary judgment brought by National Union. Briefly, on June 30, 2003, Matamoros Pipeline, Inc., a pipeline-

welding company, entered into an agreement with Mountain Cascade, Inc., a general contractor. Pursuant to this agreement, Matamoros was to provide subcontracting work on upcoming projects for Mountain Cascade. The agreement was subsequently modified on September 21, 2004, and November 21, 2004.

Section VI of the agreement provided indemnification for Mountain Cascade by Matamoros (Williamson Decl. Exh. A):

> To the greatest extent permitted by law, SUBCONTRACTOR shall defend, indemnify and hold harmless CONTRACTOR . . . from and against all actions, penalties, assessments, fines actions by governmental authorities, demands, liabilities, claims, damages, costs, losses, and expenses, including but not limited to attorney's fees and costs, which arise out of or are in any way related (i) to this AGREEMENT, (ii) to actual or alleged actions or omissions by SUBCONTRACTOR or any of its subcontractors, suppliers, vendors, employees, or persons for whom it is responsible, or (iii) to the project(s) to which the AGREEMENT relates . . . of any kind whatsoever.

Section VII imposed certain insurance requirements on Matamoros (*ibid.*):

> SUBCONTRACTOR shall carry primary Commercial General Liability Insurance covering all operations by or on behalf of SUBCONTRACTOR, and actions or omissions by SUBCONTRACTOR, providing insurance for bodily injury and property damage liability.

Section VII further provided (*ibid.*) (emphasis added):

> CONTRACTOR, its officers, directors, and employees, and OWNER shall be named as additional insureds under the Commercial General Liability policy and Excess Liability policy and *such insurance afforded the additional insureds shall apply as primary insurance. Coverage for CONTRACTOR or OWNER shall not be called upon to contribute with this insurance*.

Defendant Landmark issued a general-liability policy to Matamoros. Pursuant to the above agreement between Matamoros and Mountain Cascade, Matamoros' policy with Landmark included Mountain Cascade as an additional insured. The Landmark policy provided (Ruetggers Decl. Exh. C) (emphasis added):

> **WHO IS AN INSURED** is amended to include as an insured the person or organization shown in the SCHEDULE, but only with respect to liability arising out of 'your work' for that insured by or for you.

2

> *If you are required by a written contract to provide primary insurance, this policy shall be primary as respects your negligence.*

In 2004, Mountain Cascade was retained by the East Bay Municipal Utilities District to construct a water-supply line in Walnut Creek, California. The project called for Mountain Cascade to dig a trench on the side of a roadway and install a 5' diameter water pipe. Matamoros' workers were to follow behind the Mountain Cascade crew and weld the pipe sections as they were laid down. The water line was being laid down parallel to a high-pressure-petroleum-fuel pipeline owned by Kinder Morgan Energy Partners, L.P. That pipeline was demarcated by warning signs, but apparently inadequately so (Ruettgers Exh. A).

On November 9, 2004, the petroleum-fuel pipeline was punctured, apparently by an excavator operated by Mountain Cascade. It is undisputed that because of the puncture, pressurized petroleum was released into the trench. The parties, however, dispute what happened next. At least according to a report prepared by the Department of Forestry and Fire Protection, Office of the State Fire Marshal, "[s]everal seconds after the line was hit, the gasoline streaming out of the line was ignited by welders employed by Matamoros Pipelines, Inc. who were also working on the new water supply pipeline" (Ruettgers Exh. A). In any event, somehow the pressurized petroleum ignited, thus leading to an explosion and fire. Five workers, three from Matamoros and two from Mountain Cascade, were killed by the explosion. Four others were badly injured. There was also extensive property damage.

Shortly after the explosion, nine complaints and one cross-complaint were filed in the Superior Court of California for the County of Contra Costa seeking to recover for the injuries and damages relating to the Walnut Creek explosion.[1] The Contra Costa Superior Court subsequently coordinated the actions under the title "Gas Pipeline Explosion Cases." Mountain Cascade was named as a defendant in all ten actions. Matamoros was named as a defendant in two of the actions. Settlements relating to two of the complaints are pending

---

[1] Both parties seek judicial notice of documents from the underlying state litigation. Such public records are proper subjects for judicial notice under Federal Rule of Evidence 201. This order does not, however, judicially notice these pleadings and briefs for the truth of the allegations or arguments contained therein.

3

review, as Mountain Cascade has apparently challenged whether the settlements are in "good faith." None of the ten actions have reached a final disposition.

Mountain Cascade's own insurance company was National Union. Mountain Cascade had both primary and excess policies with National Union. On behalf of Mountain Cascade, National Union tendered Mountain Cascade's defense for all of the actions against it. Landmark, despite the implications of its policy with Matamoros, initially refused requests to assist National Union in the defense of Mountain Cascade, contending that Mountain Cascade was not covered under the Matamoros policy.

On July 8, 2005, National Union brought this action against Landmark, seeking declaratory relief, equitable indemnity and equitable contribution. On May 22, 2006, this Court issued an order on National Union's earlier partial motion for summary judgment as to the issue of whether Landmark had and continues to have a duty to defend Mountain Cascade for claims against Mountain Cascade relating to the explosion. The May 22 order found, as a matter of California law, that Landmark had a duty to defend Mountain Cascade given the potential that the damages from the explosion arose out of Matamoros' work (May 22 Order at 9). The order, however, declined to rule on the issue of which insurer's duty to Mountain Cascade was primary, explaining (*id*. at 9–10):

> [A] determination of which insurer is primary is premature at this juncture. Resolution of the ultimate issues of negligence and culpability will be necessary for a proper determination of this question. This order leaves to the parties the determination as to how to apportion the costs of defending Mountain Cascade in the underlying actions in the interim.

National Union partially renews its request for determination of which insurer bears primary responsibility for Mountain Cascade's defense, and for payment of the potential settlements. Landmark, relying on the above language from the May 22 order, argues that this issue is still not ripe for review given that no final dispositions have been reached in the underlying Gas Pipeline Explosion Cases. National Union explains, however, that its instant motion is more limited than its earlier one. The instant motion only involves an analysis of the responsibility of National Union with respect to its *excess* policy for Mountain Cascade as compared with the responsibility of Landmark under its *primary* policy for Matamoros. The

4

1    question of the relative responsibilities of National Union and Landmark on the policies they

2    provided at the same level — primary — is *not* at issue in this motion.

## ANALYSIS

Summary judgment is proper where the pleadings, discovery and affidavits show "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(c). "A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may . . . move with or without supporting affidavits for a summary judgment in the party's favor *upon all or any part thereof.*" Fed. R. Civ. Proc. 56(a) (emphasis added). The moving party has the initial burden of production to demonstrate the absence of any genuine issue of material fact. *Playboy Enterprises, Inc. v. Netscape Communications Corp.*, 354 F.3d 1020, 1023–24 (9th Cir. 2004). Once the moving party meets its initial burden, the nonmoving party must "designate specific facts showing there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

Under California law, there are two levels of insurance coverage — primary and excess. "Primary coverage is insurance coverage whereby, under the terms of the policy, liability attaches immediately upon the happening of the occurrence that gives rise to liability." *Olympic Ins. Co. v. Employers Surplus Lines Ins. Co.*, 126 Cal. App. 3d 593, 597 (1981); *see also Hartford Cas. Ins. Co. v. Mt. Hawley Ins. Co.*, 123 Cal. App. 4th 278, 284 n. 2 (2004). In contrast, "'[e]xcess' or secondary coverage is coverage whereby, under the terms of the policy, liability attaches only after a predetermined amount of primary coverage has been exhausted." *Olympic*, 126 Cal. App. 3d at 598. "It is settled under California law that an excess or secondary policy does not cover a loss, nor does any duty to defend the insured arise, until *all* of the primary insurance has been exhausted." *Community Redevelopment Agency v. Aetna Cas. & Sur. Co.*, 50 Cal. App. 4th 329, 339 (1996) (emphasis in original). "A secondary insurer thus greatly reduces his risk of loss." *Olympic*, 126 Cal. App. 3d at 598 n. 2.

These principles are not novel. Nor is the application of these principles to the instant motion complex. The language of Matamoros' agreement with Moutain Cascade clearly

5

1 indicated that it would cover "CONTRACTOR . . . under the Commercial General Liability
2 policy and Excess Liability policy and such insurance afforded the additional insureds *shall*
3 *apply as primary insurance*" (Williamson Decl. Exh. A) (emphasis added).  Accordingly,
4 Matamoros' policy with Landmark indicated "[i]f you are required by a written contract to
5 provide primary insurance, *this policy shall be primary* as respects your negligence"
6 (Ruetggers Decl. Exh. C) (emphasis added).  The May 22 order already ruled that the above
7 language from Landmark's policy applied to Mountain Cascade as the general contractor and
8 thereby covered Mountain Cascade as an additional insured.  The plain language of the policy
9 indicated that Landmark's coverage of the contractor would be *primary*.  Under the
10 well-established legal principles cited above, therefore, any excess coverage provided by
11 National Union is not implicated until Landmark's primary coverage has been exhausted.
12 *Community Redevelopment*, 50 Cal. App. 4th at 339.

13 Rather than challenge these straightforward principles, Landmark attempts to cast
14 National Union's motivation for bringing this motion in a bad light.  Contrary to Landmark's
15 depiction, National Union is not seeking to shirk its duty to defend Mountain Cascade.  On the
16 contrary, as the May 22 order demonstrated, Landmark itself was the insurer that sought to
17 *avoid* participation in Mountain Cascade's defense, despite clear precedent dictating that
18 Mountain Cascade was an additional insured under Landmark's policy for Matamoros.[2]

19 Moreover, National Union acknowledges that it may ultimately bear some responsibility
20 for the damages incurred by Mountain Cascade, even under its excess policy.  National Union
21 recognizes that it will be on the hook for the portion of the total damages levied against
22 Mountain Cascade in the Gas Pipeline Explosion Cases that exceed the limits of the Landmark
23 and National Union primary policies.  Once primary coverage is exhausted, National Union's
24 burden under its excess policy will onset, and may potentially be significant.  For now,

---

[2] Landmark also complains that it has been "shut out" of the settlement negotiations in the Gas Pipeline Explosion Cases.  Had Landmark been willing to participate in Mountain Cascade's defense at an earlier stage in the state litigation, without fighting National Union's request in this Court, there would never have been an issue of Landmark being left out.  Landmark has only itself to blame.

6

however, it is sufficient to rule that Landmark's primary coverage must be exhausted prior to any obligation accrues to National Union under its excess policy.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for partial summary judgment is **GRANTED**. Finding no further argument necessary, the hearing scheduled on this motion is hereby **VACATED**.

**IT IS SO ORDERED.**

Dated:  September 13, 2006.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE